ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MARA A. GUTIÉRREZ DONES<br><br>Apelante<br><br>v.<br><br>ALBERTO RIVERA LÓPEZ<br><br>Apelado | TA2025AP00147 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.:<br>K CU2016-00298<br><br>Sobre:<br>Custodia |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 2 de octubre de 2025.

La demandada-apelante, Mara A. Gutiérrez Dones, expresa que recurre ante este Tribunal para que revisemos la Resolución dictada el 24 de abril de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan ("TPI"), en el Caso Núm. K CU201600298. Este recurso se presentó el pasado 14 de julio de 2025. Expresa la demandada-apelante que, mediante dicha Resolución, el foro de instancia la privó de la custodia de su hija menor de edad, le concedió la misma al aquí apelado y al así actuar, acogió la recomendación emitida el 11 de marzo de 2025 por la Trabajadora Social, Lory Ann Artache Delgado de la Unidad Social del TPI.

En el recurso se menciona que en una ocasión anterior se le privó la patria potestad al padre de la menor, el señor Alberto Rivera López, quien es el demandante-apelado en la presente controversia. Luego de examinado el expediente radicado ante este Tribunal de Apelaciones, nos hemos percatado que la

demandada-apelante no aneja al denominado recurso de apelación como parte de sus apéndices la Resolución contra la que reclama recurrir, por lo que se desconoce con certeza cuál es la determinación que pretende impugnar. De hecho, no incluye ningún documento de los emitidos por el TPI. Sin embargo, una búsqueda en SUMAC del TPI refleja la Resolución de privación de custodia que gozaba la apelante y el término para reconsiderar, revisar y/o apelar la misma venció, pues se trata de una Resolución de 14 de mayo de 2025, cuyo término para ser revisada venció el 15 de junio de 2025 y este recurso se presentó el 14 de julio de 2025.

A la *Moción Urgente* presentada por la parte apelante el 22 de agosto de 2025, le ordenamos, por Resolución, al apelado replicar, lo que este hizo con un Alegato en Oposición en que solicitó la desestimación del recurso, lo que ha reiterado mediante otra réplica a otra errada moción de la parte apelante. En su Alegato en Oposición, el apelado incluyó como Apéndice 16, está esa Resolución del 14 de mayo de 2025 y el Apéndice 17 es la Minuta de la vista que provoca la Resolución del 14 de mayo de 2025.

Con este preámbulo y mirando todos los documentos en autos, hemos evaluado el caso y determinamos que no tenemos jurisdicción para atenderlo. Veamos.

**I.**

El señor Rivera López (apelado) y la señora Gutiérrez Dones, (apelante), procrearon una niña que denominaron SIRG.[1] La presente controversia tiene su génesis allá para el año 2016, cuando el demandante-apelado radicó petición de alimentos ante

---

[1] Recurso de la apelante, pág. 1.

el TPI, bajo el Caso Núm. K CU201600298. Luego de los trámites de rigor, quedó establecida la obligación alimentaria en dicho caso. Posteriormente, el demandante-apelado radicó petición de custodia y relaciones paternofiliales bajo ese mismo número de caso. La demandada-apelante ha sido la madre custodia de la menor desde esa fecha hasta el presente, estableciéndose la correspondiente cuantía de alimentos y relaciones paternofiliales. Sin embargo, desde enero del año 2023 la demandada-apelante, unilateralmente, decidió no enviar más a la menor con el padre no custodio, alegando que ello lo hacía debido al estado emocional en el que regresaba ésta a su casa y porque el padre no custodio había incumplido algunos pagos de la pensión alimentaria establecida.[2] El 27 de noviembre de 2019 las partes habían realizado una estipulación de relaciones paternofiliales. Luego de fijada una orden sobre alimentos y relaciones paternofiliales, con la anuencia del TPI, años después, el señor Rivera López (apelado) presentó una demanda en el TPI para notificar que la madre de su hija no le permitía ver ni relacionarse con la menor, en violación a las relaciones paternofiliales acordadas.

Desde el 12 de febrero de 2023 la demandada-apelante, de forma unilateral, decidió no permitir las relaciones paternofiliales entre la menor y el padre no custodio.[3]   Desde entonces la demandada-apelante, no le permite a la menor ni al padre comunicarse por llamadas o de manera presencial, a pesar de que el padre no custodio realizaba los esfuerzos para que se mantuvieran las relaciones paternofiliales.

---

[2] Véase: Apéndice 1, pág. 78 del Recurso de Apelación.
[3] Véase: Apéndice 1, págs. 32 y 78 del Recurso de Apelación. Véase, además, Apéndice 1, págs. 1-7 del Alegato en Oposición.

Allá para el mes de junio del año 2024, la Lcda. Lynda Liz Erazo Vázquez asumió la representación legal del padre no custodio. Por su parte, la demandada-apelante ha estado compareciendo por derecho propio. El 18 de junio de 2024 la demandada-apelante radicó, dentro del mismo caso, una solicitud de privación de patria potestad contra el padre de la menor. En síntesis, alegó que realizó la solicitud de privación de patria potestad porque luego de compartir con su padre, la menor regresaba afectada emocionalmente. Siendo ello así, dejó de promover las relaciones paternofiliales entre ambos.[4] El 22 de julio de 2024 el demandante-apelado, por primera vez, advino en conocimiento de dos (2) notificaciones emitidas por el TPI, las cuales le fueron notificadas a su antigua dirección, y mediante las mismas se le requería que: "En 20 días, exprese el señor Rivera López las razones para no otorgar a la señora Gutiérrez el ejercicio exclusivo de patria potestad y la suspensión de las relaciones paternofiliales."

El demandante-apelado en el "Escrito en Solicitud de Remedio" radicado el 22 de julio de 2024 ante el TPI, el escrito que dio pie a estas órdenes, no fue notificado conforme a la Regla 67.1 de las Reglas de Procedimiento Civil, por lo que no se había cumplido con el debido proceso de ley, al no estar debidamente notificado de las alegaciones que presentó la demandada-apelante en su contra.[5] Siendo esta la situación, en la misma fecha del 22 de julio de 2024, el demandante-apelado radicó ante el TPI la "Moción Desacato Relaciones Paternofiliales" mediante la cual informó sobre el incumplimiento con las estipulaciones sobre

---

[4] Véase: Apéndice 1, pág. 32 del Recurso de Apelación.
[5] Ver Apéndice 2, págs. 1-2 del Alegato en Oposición.

relaciones paternofiliales por parte de la aquí apelante, así como el patrón de enajenación parental.

Además, esbozó las razones por las cuales la demandada-apelante estaba incurriendo en un patrón de enajenación parental. Solicitó, además, el restablecimiento de las relaciones paternofiliales o en la alternativa, que se ordenara a la Unidad de Trabajo Social realizar el informe correspondiente para restablecimiento de estas.[6]

El 16 de agosto de 2024 la demandada-apelante sometió al TPI un escrito solicitando autorización para la relocalización de la menor fuera de la jurisdicción de Puerto Rico. Ello, a pesar de que el demandante-apelado había realizado múltiples gestiones extrajudiciales para ver o relacionarse con la menor, las cuales resultaron infructuosas. El 16 de septiembre de 2024 el demandante-apelado radicó "Moción en Oposición a Traslado" en la cual, entre otras, expuso nuevamente al TPI sobre los indicadores de enajenación parental que había venido presentando la demandada apelante hacía más de un (1) año, por lo que resultaban importantes los hallazgos que pudieran surgir del Informe Social y las evaluaciones psicológicas que a esa fecha ya habían sido ordenadas por el TPI. Además, recalcó que la solicitud de relocalización de la menor no cumplía con lo requerido para ello.[7]

El 6 de septiembre de 2024 la demandada-apelante radicó moción ante el TPI, mediante la cual reclamó una serie de gastos, cuya suma asciende a $259,642.39.[8]

---

[6] Ver Apéndice 1, págs. 1-7 del Alegato en Oposición
[7] Véase: Apéndice 3, págs. 1-3 del Alegato en Oposición.
[8] Véase: Apéndice 4, págs. 1-2 del Alegato en Oposición.

El 7 de octubre de 2024 el demandante-apelado radicó "Moción en Cumplimiento de Orden",[9] mediante la cual se opuso a los gastos solicitados por la demandada-apelante, puesto que, mediante Resolución emitida por el TPI el 20 de octubre de 2016, se había establecido la pensión alimentaria.[10] Luego de varios trámites procesales, el 11 de diciembre de 2024 el TPI emitió Resolución exponiendo la suma a ser pagada por el padre no custodio y el plan de pago establecido, con efectividad al 1 de enero de 2025, para la deuda por concepto de alimentos que este tiene con respecto a la menor.[11] En esa misma fecha se celebró vista en la cual el TPI, en corte abierta, concedió a la demandada-apelante hasta el 1 de febrero de 2025 para que anunciara representación legal. Durante la vista, el TPI le informó a la demandada-apelante sobre las gestiones que podría hacer para obtener representación legal de forma gratuita. No habiendo cumplido con esta orden, el 11 de febrero de 2025 el demandante-apelado radicó "Moción Urgente en Solicitud de Remedio"[12]. En esa moción recalcó dicho incumplimiento, además que continuaba incumpliendo con la Regla 67.2 de Procedimiento Civil sobre notificaciones. El 14 de febrero de 2025, la Trabajadora Social presentó el Informe Social correspondiente. El TPI, mediante Orden emitida el 19 de febrero de 2025, instruyó a las partes a que en el término de veinte (20) días mostraran causa y fundamento en derecho por lo cual dicho foro no debía acoger las recomendaciones de este y procediera a dictar resolución. Además, apercibió a las partes que, de no comparecer por escrito durante dicho término, el Tribunal podría

---

[9] Véase Apéndice 5, págs. 1-2 del Alegato en Oposición
[10] Véase Apéndice 1, págs. 1-2 del Recurso de Apelación.
[11] Véase: Apéndice 6, pág. 1 del Alegato en Oposición.
[12] Véase: Apéndice 7, págs. 1-3 del Alegato en Oposición.

dictar resolución conforme las recomendaciones del Informe Social, sin más citarle ni oírle.[13]

Las recomendaciones basadas en los hallazgos de las evaluaciones psicológicas y psiquiátricas de las partes y la menor en la Clínica de Diagnóstico del Poder Judicial son las siguientes:

"1. Se recomienda que la Sra. Mara A. Gutiérrez Dones, participe de intervención psicosocial para trabajar con los indicadores relacionados a las distorsiones cognitivas y para evitar los indicadores de alienación y enajenación parental.

2. Que la Sra. Mara A. Gutiérrez Dones, se abstenga de incluir a la menor en las desavenencias entre las partes para evitar indicadores de enajenación parental o que afecten su estado emocional.

3. Que el Sr. Alberto Rivera López, participe de intervención psicosocial para el desarrollo de destrezas de crianza y de relaciones filiales.

4. Que las partes se beneficien de terapia familiar para el desarrollo de destrezas de comunicación.

5. Que la menor participe de intervención psicosocial para el manejo de los indicadores emocionales identificados (ansiedad, inseguridad, preocupaciones con el medioambiente, sentimientos de inadecuación, agresividad e impulsividad).

6. Que las partes presenten evidencia al tribunal de haber iniciado las intervenciones psicosociales recomendadas."

El 18 de marzo de 2025 la demandada-apelante radicó "Moción Impugnando Informe Social".[14] El 24 de marzo de 2025 el TPI emitió Resolución mediante la cual expresó que la "Moción Impugnando Informe Social" presentada por la demandada-

---

[13] Véase Apéndice 8, págs. 1-2 del Alegato en Oposición.
[14] Véase Apéndice 9, págs. 1-9 del Alegato en Oposición.

apelante no cumplía con los criterios de impugnación. Siendo ello así, le requirió cumplimentar los formularios OAT 1385 y 1564 en aras de asignarle abogado de oficio.[15]

En el interín, el demandante-apelado estuvo realizando las gestiones correspondientes para lograr el restablecimiento de las relaciones paternofiliales de manera supervisada por la Unidad Social, conforme las recomendaciones realizadas en el Informe Social. Siendo ello así, el 1 de abril de 2025 mediante "Moción en Cumplimiento de Orden",[16] estuvo informando al TPI sobre las gestiones realizadas. A esa fecha ya el demandante-apelado llevaba aproximadamente dos (2) años sin poder relacionarse con la menor. El 11 de abril de 2025 la Trabajadora Social, Lory Ann Artache Delgado, sometió al TPI la "Moción de la Unidad Social de Relaciones de Familia y Asuntos de Menores"[17]. Este documento se subió al sistema SUMAC de forma confidencial, por la parte apelada, debido a la naturaleza de este. En dicha moción la Trabajadora Social se reiteró en las recomendaciones vertidas en el Informe Social Forense, las cuales fueron recogidas por el TPI en la Orden emitida el 19 de febrero de 2025,[18] las cuales se encuentran recogidas anteriormente en este escrito. El 22 de abril de 2025 el TPI emitió Orden otorgando a la demandada-apelante un término perentorio de cinco (5) días para completar el Formulario 1385, en aras de asignarle abogado de oficio.[19] El 24 de abril de 2025 el TPI emitió Orden a la demandada-apelante, donde le requirió acudir, junto a la menor, a APS Clinic para cita el 6 de mayo de 2025 a las 2:00 p.m. con la Trabajadora Social Leonor Benítez y le indicó la dirección. Expresó, además, el TPI

---

[15] Ver: Apéndice 10, pág. 1 del Alegato en Oposición.
[16] Ver: Apéndice 11, págs. 1-2 del Alegato en Oposición.
[17] Ver: Apéndice 12, págs. 1-6 del Alegato en Oposición.
[18] Ver: Apéndice 8, págs. 1-2 del Alegato en Oposición.
[19] Ver: Apéndice 13, pág. 1 del Alegato en Oposición.

que, de no acudir a la cita podría ser declarada incurso en desacato.[20] No habiendo acudido a la cita el 6 de mayo de 2025 a las 2:00 p.m., el 23 de mayo de 2025 el TPI emitió mediante una Orden para que acudiera a APS Clinic para cita el 30 de mayo de 2025 a las 8:00 a.m. con la Trabajadora Social Leonor Benítez y le indicó la dirección. Expresó, además, el TPI que, de no acudir a la cita podría ser declarada incurso en desacato.[21]

El 14 de mayo de 2025 el TPI emitió Resolución en la cual acogió las recomendaciones del Informe Social del 14 de febrero de 2025, en el cual la Trabajadora Social expresó que no estaban presentes los elementos, según establecidos en el Artículo 615 del Código Civil de Puerto Rico, para considerar la privación ni la restricción de la patria potestad al señor Alberto Rivera López.[22] En esa misma fecha el TPI celebró vista, la cual fue recogida en la Minuta transcrita el 15 de mayo de 2025.[23] El 29 de mayo de 2025 el demandante-apelado radicó "Moción en Solicitud de Vista Urgente",[24] en la cual expresó que la demandada-apelante había incumplido con las órdenes dictadas por el TPI e incomparecencia a las vistas señaladas. Además, solicitó que si la demandada-apelante continuaba poniendo en riesgo la salud de la menor, obstaculizando los procesos y desacatando órdenes del tribunal, se le otorgaría la custodia de la menor a favor del padre.

Ante esta situación, el 30 de mayo de 2025 el TPI emitió una Orden a ser diligenciada por Alguaciles, mediante la cual, so pena de desacato, se le ordenó a la demandada-apelante otorgar acceso a la residencia a la Trabajadora Social, Heidis M. Pérez Báez, del Programa PIES y poner a su disposición toda la

---

[20] Ver: Apéndice 14, pág. 1 del Alegato en Oposición.
[21] Ver: Apéndice 15, pág. 1 del Alegato en Oposición.
[22] Ver: Apéndice 16, págs. 1-2 del Alegato en Oposición.
[23] Ver: Apéndice 17, págs. 1-3 del Alegato en Oposición.
[24] Ver: Apéndice 18, págs. 1-4 del Alegato en Oposición.

información relacionada a la investigación que se estaba realizando.[25] El 3 de junio de 2025 la Unidad Social presentó "Moción de la Unidad Social de Relaciones de Familia y Asuntos de Menores", mediante la cual expresó que la demandada-apelante se había ausentado a varias vistas y se había negado a recibir los servicios de salud mental coordinados. Además, informó que la demandada-apelante no compareció el 30 de mayo de 2025 a la cita coordinada con APS Clinic,[26] para los servicios de salud mental coordinados.

El 13 de junio de 2025, notificada el 17 de junio de 2025, el TPI emitió Resolución y Orden mediante la cual señaló vista presencial para el 1 de julio de 2025, a las 10:30 a.m.[27] En esa misma fecha el TPI emitió "Designación de Defensor Judicial" al amparo de la Regla 15.2 de las Reglas de Procedimiento Civil, asignando a la Lcda. Rosa L. Vázquez López, como Defensora Judicial de la demandada-apelante.[28] A esos efectos expidió Resolución y Orden dirigida a la Lcda. Rosa L. Vázquez López con su designación como Defensora Judicial de la demandada-apelante. Así mismo, ese día también el TPI emitió Resolución atendiendo una moción radicada por la demandada-apelante, en la cual expresó que ya se había señalado vista; que se le había asignado Defensor Judicial; y que el Informe Social fue acogido por el Tribunal.[29]

El 25 de junio de 2025 el TPI emitió Resolución y Orden en la cual declaró No Ha Lugar la solicitud de recusación de la Lcda. Lynda Liz Erazo Vázquez presentada por la demandada-apelante. Además, ordenó a Secretaría el cese de notificaciones a la Unidad

---

[25] Ver: Apéndice 19, pág. 1 del Alegato en Oposición.
[26] Ver: Apéndice 21, pág. 1 del Alegato en Oposición.
[27] Ver: Apéndice 26, pág. 1 del Alegato en Oposición.
[28] Ver: Apéndice 25, pág. 1 del Alegato en Oposición.
[29] Ver: Apéndice 27, pág. 1 del Alegato en Oposición.

Social del Tribunal, y aclaró que la Lcda. Erazo Vázquez representa legalmente al señor Rivera López, demandante-apelado, por lo que está autorizada a notificar a la otra parte toda comunicación que presente al Tribunal.[30]

El demandante-apelado fue enfático en dicha moción al recalcar que del informe preparado por la Trabajadora Social el referido fue validado por ésta y determinó CON FUNDAMENTO bajo las tipologías de negligencia emocional, negligencia médica y negligencia por parte de la demandada-apelante.[31] Ante estas situaciones, el 2 de julio de 2025 el TPI emitió Resolución mediante la cual ordenó: 1) que la menor recibiera servicios psicológicos inmediatamente; 2) que la demandada-apelante acudiera a las citas coordinadas en APS so pena de desacato; 3) que la demandada-apelante debía cumplir con el plan de servicios de preservación establecido por el Dpto. de la Familia; 4) ambos padres presentarían al tribunal alternativas de escuela para el comienzo del semestre de agosto 2025; 5) comienzo de relaciones paternofiliales en un contexto terapéutico de forma inmediata; 6) la demandada-apelante debía matricular a la menor en clases de baile en un término de 20 días; entre otros.[32] El 14 de julio de 2025 la demandada-apelante radicó el presente Recurso de Apelación y "Solicitud para litigar in forma pauperis".[33]

En este recurso, la apelante no detalla contra qué Orden recurre, como tampoco detalla un señalamiento de error. Al evaluar el escrito aquí presentado y escritos posteriores, nos percatamos que la apelante intentó recurrir, como concluye también el apelado, de la Resolución emitida y notificada por el

---

[30] Véase Apéndice 28, pág. 1 del Alegato en Oposición.
[31] Véase Apéndice 30 a la pág. 3 del Alegato en Oposición.
[32] Véase Apéndice 31, págs. 1-2 del presente Alegato en Oposición.
[33] Véase Entradas Núms. 1 y 2 del Expediente de la Apelación.

TPI el 14 de mayo de 2025 y este recurso denominado de apelación, se presentó el 14 de julio de 2025.

El 15 de julio de 2025 la demandada-apelante radicó dos (2) mociones informativas. Véase: Entradas Núms. 3 y 4 del expediente de la apelación TA2025AP00147. El 24 de julio de 2025 la demandada-apelante radicó moción complementaria.

Veamos el derecho aplicable.

## II.

### A. Casos sobre Custodia de un Menor

Como se sabe, los casos de familia están revestidos del más alto interés público. *Figueroa v. Del Rosario*, 147 DPR 121, 128 (1998). Es por ello por lo que la protección de nuestros niños constituye uno de los pilares de nuestro derecho de familia, así como uno de los deberes que los tribunales de justicia, al amparo de su poder de *parens patriae,* debemos satisfacer con ánimo férreo.

Al considerar los derechos de los padres sobre la custodia de sus hijos, se requiere también citar varias expresiones de peso emitidas por el Tribunal Supremo Federal en el normativo *Troxel v. Granville*, 530 U.S. 57 (2000). Se dijo allí, por voz de la juez O`Connor, que la Enmienda Decimocuarta dispone que ningún Estado privará a una persona de su vida, libertad, o propiedad, sin un debido proceso de ley. Emda. XIV Const. EE. UU. *Esta misma cláusula provee protección contra la interferencia del gobierno con ciertos derechos fundamentales. **Entre estos derechos fundamentales** se encuentran la relación de los padres con sus hijos*. *Id*., pág. 66. (Énfasis y subrayado provistos). El interés libertario en este caso – el de los padres cuidar a sus hijos y ostentar su custodia- *is perhaps **the oldest***

*of the fundamental liberty interests recognized by this Court*. *Íd*. (Énfasis provisto). *Nuestro sistema constitucional rechazó hace mucho tiempo cualquier noción de que los niños sean meras criaturas del Estado*. *Íd*. (Traducción nuestra). *The Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions **simply because a state judge believes a "better" decision could be made***. *Íd*., pág. 73. (Énfasis provisto).

Cónsono con lo anterior, en *Rexach v. Ramírez*, 162 DPR 130 (2004), nuestro Tribunal Supremo señaló que en el concepto "libertad" de la Enmienda Decimocuarta están incluidos, entre otros, el derecho a casarse, a establecer un hogar **y a criar a los hijos**. El mismo alto foro de nuestro territorio, reproduciendo una de las expresiones del Tribunal Supremo Federal ya señaladas, también aseveró que **los menores de edad no son meras criaturas del Estado**; *por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuidado, la custodia y el control de sus hijos*. *Íd*., pág. 428. (Énfasis provisto). Ver, también, *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416, 428 (2018).

Aún más, en *Sterzinger v. Ramírez*, 116 DPR 762, 777 (1985), citando al profesor Efraín González Tejera, "Bienestar del menor: señalamientos en torno a la patria potestad, custodia y adopción", en: *Cambios sociales y nuevos enfoques en el derecho de familia*, Centro de Investigaciones Sociales, UPR, 1984, pág. 112, nuestro Tribunal Supremo expresó que *el derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica, **no es mera derivación del bienestar del niño**, sino parte **también de derechos fundamentales que nacen de la***

*paternidad [o la maternidad], de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo*". (Énfasis provisto).

Debe quedar así claramente establecido que ***el proceso de privar de custodia a cualquiera de los progenitores para que solo uno obtenga —por el mejor bienestar del menor— el pleno disfrute de esta***, ***<u>conlleva claras consideraciones de debido proceso de ley</u>***. *Rentas Nieves v. Betancourt Figueroa*, supra, pág. 428. (Énfasis y subrayado provistos). De lo que se deriva que ***el debido proceso de ley procesal exige que en todo procedimiento adversativo se cumpla con ciertos requisitos, entre los que se encuentran el que una parte tiene derecho a examinar la evidencia presentada en su contra y a contrainterrogar a los testigos de la otra parte***. *Íd*.

Ante dicha obligación inalienable, los tribunales —en los casos en que la custodia[34] de un menor esté siendo objeto de controversia— deben conceder la misma a aquel padre que sea más conveniente y beneficioso para el niño; de modo que promueva su bienestar, desarrollo y vida plena. Recordemos que el TPI tiene el deber de adjudicar la custodia a base del mejor bienestar e interés de los menores; guía y norte de todo caso de familia. Art. 604 del Código Civil de Puerto Rico, 31 LPRA sec. 7283; *Rivera v. Morales*, 167 DPR 280, 291, 293 (2006); *Maldonado v. Burris*, 154 DPR 161, 164 (2001); *Nudelman v. Ferrer Bolívar*, 107 DPR 495, 508-509 (1978); *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976).

---

[34] La custodia es un componente de la patria potestad y la misma consiste en la tenencia o control físico que tienen los padres sobre su prole. *Torres, Ex parte*, 118 DPR 469, 476 y 477 (1987).

Para facilitar tan ardua encomienda la jurisprudencia fijó unos criterios o guías que se deben sopesar al momento de otorgar la custodia, a saber: (1) la preferencia del menor; (2) su sexo, edad y salud mental y física; (3) el cariño que puede brindársele por las partes en controversia; (4) la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (5) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (6) la interrelación del menor con las partes, sus hermanos, y otros miembros de la familia; y 7) la salud psíquica de todas las partes. Es claro que ninguno de estos factores es por sí solo decisivo, por lo que hay que evaluarlos todos en aras de arribar a la solución más justa y razonable posible.[35] *Rivera v. Morales*, *supra*, a la pág. 293; *Nudelman v. Ferrer Bolívar*, *supra*, a la pág. 511-512.

Los criterios antes precisados son esenciales y deben analizarse a la luz de la realidad fáctica del caso en cuestión. Consecuentemente, la no contemplación de estos puede incidir en una decisión de custodia errada y que no garantice el mejor bienestar del menor.

Es importante enfatizar que el poder de *parens patriae* que ostentan los tribunales de justicia debe ejercerse con responsabilidad y ahínco. No cabe duda de que nosotros tenemos el deber de velar por el mejor bienestar e interés de los menores.

---

[35] En *Santana Medrano v. Acevedo Osorio*, 116 DPR 298 (1985) nuestro Tribunal Supremo dispuso, en relación a las determinaciones de custodia, lo siguiente:

*Dicha decisión es una a la que el tribunal debe llegar después de realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso en ese momento ante la consideración del tribunal, teniendo como único y principal objetivo el bienestar de los menores. [Citas omitidas]. […] a esos efectos, y antes de emitir una decisión al respecto, tiene a su alcance el ordenar la comparecencia de cuanta persona entienda pueda ayudarle en el descargo de su delicada misión y puede, asimismo, ordenar aquellas investigaciones de índole social que entienda procedentes y convenientes. [Citas omitidas]. Íd., a la pág. 301.*

Por lo tanto, las decisiones referentes a custodia no pueden tomarse livianamente, ya que estas inciden y repercuten en la vida de nuestros niños. En consecuencia, la adecuada e informada decisión es esencial para proteger a los menores y evitar así el sufrimiento y daño emocional y psicológico que puede tener el cambio de hogar y circunstancias familiares, así como la falta de una figura materna o paterna a tiempo completo.

## B. Jurisdicción

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024); *Pueblo v. Torres Medina*, 211 DPR 950, 958 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.*, 210 DPR 384, 394 (2022). Es principio reiterado que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *R&B Power, Inc. v. Junta de Subastas ASG*, *supra,* pág. 698; *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). Nuestro Máximo Foro ha sido enfático en que la ausencia de jurisdicción es un defecto insubsanable. *Shell Chemical Yabucoa, Inc. v. Santos Rosado*, 181 DPR 109, 112 (2012).

Por tanto, en todo caso, los foros primarios y apelativos deben analizar si poseen jurisdicción para atender las controversias presentadas. *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). Así pues, si un tribunal carece de jurisdicción lo procedente es la desestimación del caso sin entrar en los méritos de la controversia. *R&B Power, Inc. v. Junta de Subastas ASG*, *supra,* pág. 698; *Mun. San Sebastián v. QMC Telecom*, *supra*.

En ese sentido, la Regla 83 del Reglamento del Tribunal de Apelaciones confiere facultad a este Tribunal para que, a iniciativa propia o a petición de parte, desestime un recurso de apelación por falta de jurisdicción. 4 LPRA Ap. XXII-B, R. 83.

### C. Recurso de Apelación

La Regla 13 del Reglamento del Tribunal de Apelaciones,[36] expone en su primer párrafo de la sección (A) y citamos:

"Las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Primera Instancia se presentarán dentro del término jurisdiccional de treinta (30) días, contados desde el archivo en autos de una copia de la notificación de la sentencia, a menos que alguna ley especial aplicable disponga un término distinto. El archivo en autos de copia de la notificación de tales sentencias será equivalente a la fecha de envío de la notificación por la plataforma electrónica designada."

Además, hay otras disposiciones que se tiene que respetar cuando se presenta una apelación. Veamos.

La Regla 16 de dicho Reglamento además establece el formato que debe seguirse en los escritos de apelación en casos civiles. A esos efectos, además de la cubierta, la citada regla dispone que el escrito debe contener:

> (B) Índice
> Inmediatamente después, habrá un índice detallado de la solicitud de conformidad con lo dispuesto en la Regla 75 de este Reglamento.
> (C) Cuerpo
> (1) Todo escrito de apelación contendrá numerados, en el orden aquí dispuesto, los requerimientos siguientes:
> (a) En la comparecencia, el nombre de las partes apelantes.
> **(b) Las citas de las disposiciones legales que establecen la jurisdicción y la competencia del tribunal.**

---

[36] In Re Reglamento del Tribunal de Apelaciones, Resolución ER 2004-10, aprobada el 21 de julio de 2004, según enmendado.

(c) Una referencia a la sentencia cuya revisión se solicita, la cual incluirá el nombre y el número del caso, la Sala del Tribunal de Primera Instancia que la dictó y la Región Judicial correspondiente, la fecha en que fue dictada y la fecha en que se archivó en autos copia de su notificación. **También, una referencia a cualquier moción, resolución u orden mediante las cuales se haya interrumpido y reanudado el término para presentar el escrito de apelación.** La parte acreditará si, al momento de presentarse el recurso, existe algún otro recurso ante el Tribunal de Apelaciones o el Tribunal Supremo sobre el caso objeto del recurso. Además, si cualquiera de las partes, luego de la presentación del recurso, adviene en conocimiento de que se ha presentado otro recurso ante el Tribunal de Apelaciones, o el Tribunal Supremo, sobre el mismo caso, tendrá la obligación de informarlo al Tribunal de Apelaciones inmediatamente, mediante moción al respecto.
**(d) Una relación fiel y concisa de los hechos procesales y de los hechos importantes y pertinentes del caso.**
**(e) Un señalamiento breve y conciso de los errores que a juicio de la parte apelante cometió el Tribunal de Primera Instancia.**
**(f) Una discusión de los errores señalados, incluso las disposiciones de ley y la jurisprudencia aplicables.**
(g) La súplica. 4 LPRA Ap. XX11-B, R.16.

Asimismo, debe señalarse que la Regla 16, inciso (E), dispone que todo escrito de apelación debe acompañarse de un apéndice que contenga, entre otros documentos, una copia literal de las alegaciones de las partes en el foro de instancia, la demanda inicial, la sentencia cuya revisión se solicita y la notificación de su archivo en autos. Igualmente, deben incluirse aquellos documentos del expediente original del foro primario que resulten útiles para la adecuada consideración de la controversia por este Tribunal. 4 LPRA Ap. XXII-B, R.16 (E) (1). La jurisprudencia ha reiterado que las normas relacionadas al perfeccionamiento de un recurso apelativo deben ser observadas con rigor. *Rojas v. Axtmayer Ent., Inc.*, 150 DPR 560, 564 (2000) citando a *Arriaga v. FSE, 145 DPR 122*, 130 (1998).

## D. Recurso de Certiorari

El auto de certiorari es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[37] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[38]

Al presentarse un recurso de *certiorari* de naturaleza Civil ante nosotros, es preciso evaluarlo a la luz de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1. Como es sabido, la Regla 52.1 de Procedimiento Civil, [supra], es la disposición reglamentaria que regula todo lo relacionado a la revisión de sentencias y resoluciones dictadas por el Tribunal de Primera Instancia.[39] Dicha Regla limita la autoridad de este Tribunal para revisar las órdenes y resoluciones interlocutorias dictadas por los tribunales de instancia por medio del recurso discrecional de *certiorari*.

La Regla 52.1 de Procedimiento Civil, supra*,* nos habilita como foro revisor a evaluar el auto de *certiorari* cuando se recurre de una resolución que atiende casos de reclamaciones de familia, como el que está ante nuestra consideración.

La discreción judicial "no se da en un vacío ni en ausencia de unos parámetros".[40] Recordemos que, a fin de que el Tribunal de Apelaciones pueda ejercer su discreción de manera prudente, la Regla 40 de su Reglamento, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que dicho foro debe considerar al determinar si

---

[37] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016).
[38] *Pueblo v. Díaz de León*, 176 DPR 913 (2009); *García v. Padró*, 165 DPR 324, 334 (2005).
[39] *Municipio de Caguas v. JRO Construction*, 201 DPR 707, (2019).
[40] *Id.; IG Builders v. BBVAPR, supra*, pág.338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).

procede o no expedir un auto de certiorari.[41] En particular, esta

Regla dispone los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[42]

El TSPR ha manifestado, que los tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto.[43] Por tal razón, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia, salvo que incurra en algunas de las conductas previamente mencionadas.

---

[41] *Municipio v. JRO Construction, supra.*
[42] 4 LPRA Ap. XXII-B, R. 40.
[43] *Citibank, et al. v. ACBI, et al.*, 200 DPR 724, 736 (2018).

Además, la Regla 32 del Reglamento del Tribunal de Apelaciones,[44] expone en su sección (C) y citamos:

"El recurso de Certiorari para revisar cualquier otra resolución, orden o dictamen revisable por esta vía de conformidad con la ley, incluida una orden de protección, así como revisar una sentencia final producto de una solicitud de revisión de un laudo de arbitraje del Tribunal de Primera Instancia se formalizará mediante la presentación de una solicitud dentro de los treinta días siguientes a la fecha del archivo en autos de una copia de la notificación de la resolución u orden recurrida, a menos que alguna ley especial aplicable disponga un término distinto. Este término es de cumplimiento estricto."

## III.

En el presente caso, el Recurso adecuado debió ser el de certiorari y la autoproclamada apelante nunca presentó una moción de reconsideración al amparo de la Regla 47 de Procedimiento Civil vigentes, contra alguna Resolución que aquí parece impugnar.[45] Por tal razón, no tuvo el efecto de interrumpir ni suspender el plazo estricto para presentar un Recurso de Certiorari. Además, la auto proclamada apelante que realmente debe denominarse recurrida no cumplió ninguna de las demás Reglas del Tribunal de Apelaciones que antes hemos citado, pues aplican a este recurso.

Según ha reiterado nuestro más alto foro, este Tribunal no puede descartar y sustituir por sus propias apreciaciones -fundamentadas en un examen del expediente del caso- las determinaciones tajantes y ponderadas del foro de instancia. La

---

[44] In Re Reglamento Del Tribunal de Apelaciones, Resolución ER 2004-10, aprobada el 21 de julio de 2004, según enmendado.
[45] 32 LPRA Ap. V, R. 47.

determinación de credibilidad del tribunal sentenciador merece gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos.[46]

Los foros apelativos pueden dejar sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que "del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido.

La peticionaria que tituló su escrito Apelación no demostró que el TPI actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto en su determinación.

Con ello se demuestra, que, si el recurso hubiera sido un Certiorari, igualmente se desestimaría por las mismas razones.

Si el recurso era contra la orden del 2 de julio de 2025, se le negaría el mismo por no cumplir con los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra.

Una búsqueda en SUMAC del TPI refleja que la Resolución de privación de custodia y el término para reconsiderar, revisar y/o apelar la misma venció ya, pues se trata de una Resolución del 14 de mayo de 2025, cuyo término para ser revisada venció el 15 de junio de 2025 y este recurso se presentó el 14 de julio de 2025. Evaluado el recurso con mucho detenimiento, en todas las posibles alternativas contra las que se podía recurrir, este foro hubiera denegado el recurso.

---

[46] *Argüello v. Argüello,* 155 DPR 62 (2001).

De igual modo, el escrito de apelación incoado ni el Recurso de Certiorari que debió presentar, no cumple con los requisitos y las formalidades que el Reglamento de este Tribunal exige para la presentación y el perfeccionamiento de alguno de esos recursos, procede desestimar el mismo.

**IV.**

Por los fundamentos antes expuestos, se atiende el asunto como uno de Certiorari y se desestima por falta de jurisdicción o se niega la expedición del Recurso.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones